UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| PEDRO VICENTE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:20-cv-00578-JPH-MG |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Respondent. | ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Pedro Vicente is in custody pursuant to a 2014 Indiana conviction for child molesting. He brings this petition for writ of habeas corpus alleging that his trial and appellate counsel were ineffective and that the post-conviction trial court denied him due process. For the reasons below, the petition for writ of habeas corpus is **DENIED**, and the Court declines to issue a certificate of appealability.

I. Background

A. Mr. Vicente's Offense[1]

In March 2012, nine-year-old J.M. lived with her mother, her grandmother, and her mother's off-and-on boyfriend, Mr. Vicente. J.M. suffers from cerebral palsy and epilepsy, and she cannot eat, walk, speak, or care for herself. J.M.'s mother and grandmother were her primary caregivers, but others—including a respite nurse and Mr. Vicente—assisted at times.

---

[1] Except where otherwise noted, the facts about Mr. Vicente's offense are drawn from the Indiana Court of Appeals decision on post-conviction review: *Vicente v. State*, No. 18A-PC-2503 (Ind. Ct. App. Jan. 15, 2020) (*available at* dkt. 10-14).

1

One evening in early March 2012, Mr. Vicente changed J.M.'s diaper. J.M.'s mother could see this through a video monitor. At one point during the changing, J.M.'s mother saw Mr. Vicente quickly pull his hand away. Over the next few days, there was a slow trickle of blood from J.M.'s genitals. J.M.'s mother was not concerned, because Mr. Vicente told her that he had accidentally scraped J.M. with his fingernail when changing the diaper.

Five days later, on March 7, 2012, Mr. Vicente returned home from work around 5:30 p.m. J.M.'s mother asked if he would like to join her for a trip to the grocery store, but he declined. Instead, he agreed to watch J.M. while she and J.M.'s grandmother went to the store. The women changed J.M.'s diaper shortly before leaving for the store, around 6:00 or 6:30 p.m. Other than the small injury from earlier in the week, J.M. was fine. When the women returned between 7:30 and 7:45 p.m., Mr. Vicente was sitting on the couch. No one else had been alone with J.M. that day.

Around 10:00 p.m., J.M.'s mother changed her diaper. The diaper was filled with blood and a blood clot several inches long. J.M.'s mother screamed, and her grandmother called 911. An ambulance arrived and drove J.M. to the hospital. Her mother, grandmother, and Mr. Vicente drove separately. On the way to the hospital, Mr. Vicente kept telling J.M.'s mother, "I'm sorry" and "I told you I didn't mean to hurt her." Trial Tr. 211 (J.M.'s mother's testimony).

J.M. was initially treated at St. Vincent's Hospital in Frankfort, Indiana, but she was later transferred to Riley Hospital for Children around 2:30 a.m. on

March 8, 2012. Trial Tr. 292:9–22 (Tina Hernandez testimony); Trial Tr. 321:4–9 (Angela Bates testimony).

J.M. had two vaginal tears that required stitches. One of them was several inches long. Doctors believed that the injuries were caused by blunt force trauma during penetration of J.M.'s vagina.

**B.     The Timeline Defense**

Dr. Roberta Hibbard, a child abuse pediatrician who assessed J.M. at Riley Hospital for Children, testified at trial about the timing of J.M.'s injuries:

> Q   Let's start with the history you received . . . What was the claim of injury to the child?
>
> A   Well, she presented with significant vaginal bleeding, and the history that had been provided was that she had been scratched several days earlier in that area. There had been a couple of drops of blood in her diaper for a few days and now all of [a] sudden she was bleeding profusely.
>
> Q   And . . . did that match that history? The extent of the injury match that history?
>
> A   No — she . . . may or may not [have] had a small scratch several days earlier, but a small scratch wouldn't — was not consistent with the injury we were seeing. Something else had to have happened to her since then and, in fact, she had an arterial bleeder according to the Trauma Surgeon. So she actually had an artery that was bleeding and there's no way that would have been going on for three days with no one knowing it.
>
> Q   Give us a time-line then of when the injury would have occurred compared to when she presented to the hospital with that type of injury and what you saw and what the other doctors saw.
>
> A   It would [have] been very quick in that once she had the injury with the vessels that had been disrupted, uhm, she would have started to bleed significantly right away. So as soon as someone noticed the bleeding, it would [have] been obvious

3

>   that it was a lot of bleeding and one would expect that she would [have] been brought to care immediately.
>
> Q   So if mother testified yesterday that when she came back from the grocery store and got [J.M.] ready for bed about ten o'clock more or less, that, that's when she noticed it, when in relation to ten o'clock would — and noticed a lot of blood in the diaper, including clots from the diaper, when would that injury [have] occurred?
>
> A   Shortly before then. I — I can't give you a five minutes, ten minutes, yes, but it's not days. It's a matter of minutes to you know, an hour or so probably.

Trial Tr. 350:23–352:19.

According to Mr. Vicente, this testimony should have foreclosed a finding of guilt: "The State's EXPERT witness, Dr. Hibbert [*sic*], testified that the amount of blood at 10 p.m. indicated that the injury to JM occurred ONE (1) HOUR earlier, which would have been 9:00 p.m., more than two (2) HOURS after the mother and grandmother took over the custody and control of J.M." Dkt. 2 at 3. Trial counsel did not argue the timeline defense to the jury. *See generally* Trial Tr. 476–80; *cf.* dkt. 10-15 at 9, 11 (Mr. Vicente referring to this forgone argument as the "timeline defense").

    **C.**    **Conviction, Appeal, and State Post-Conviction Review**

Mr. Vicente was convicted of Class A felony child molesting, and the trial court sentenced him to a 45-year prison term. Dkt. 10-14 at 4. On direct appeal, Mr. Vicente argued that the trial court committed reversible error in denying Mr. Vicente's for-cause juror challenges and in instructing the jury. Dkt. 10-3. The Indiana Court of Appeals affirmed, dkt. 10-6, and Mr. Vicente's petition for transfer was denied, dkt. 10-2 at 4.

Mr. Vicente next filed a pro se post-conviction petition alleging that his trial and appellate counsel were ineffective. Dkt. 10-14 at 4. He later filed an amended petition raising only ineffective assistance of trial counsel. *Id.* at 5. Mr. Vicente's primary contention was that counsel failed to argue the timeline defense. *Id.*

The post-conviction court held an evidentiary hearing, during which Mr. Vicente was assisted by an interpreter. *Id.* Mr. Vicente called trial counsel to testify, but the court sustained objections to many of his questions because they invited trial counsel to re-hash the trial evidence. *Id.* at 5–7. When Mr. Vicente continued with similar questions, the court excused trial counsel from the witness stand. *Id.* at 7. The court then allowed Mr. Vicente an opportunity to argue why he believed trial counsel was ineffective. *Id.* Mr. Vicente argued that trial counsel was ineffective for failing to present the timeline defense to the jury. *Id.*

The court denied Mr. Vicente's post-conviction petition. On appeal, Mr. Vicente argued that (1) the post-conviction trial court abused its discretion when it cut short his questioning of trial counsel; (2) he was convicted based on insufficient evidence in violation of due process; (3) trial counsel was ineffective for failing to argue the timeline defense; and (4) appellate counsel was ineffective for failing to consult with Mr. Vicente and argue that he was convicted based on insufficient evidence. Dkt. 10-11. The Indiana Court of Appeals affirmed. Dkt. 10-14.

Mr. Vicente filed a petition to transfer to the Indiana Supreme Court, arguing that the post-conviction trial court erred in cutting short his questioning of trial counsel and that trial counsel was ineffective for failing to present the timeline defense. Dkt. 10-15. The Indiana Supreme Court denied Mr. Vicente's petition to transfer. Dkt. 10-10 at 10.

### D.  28 U.S.C. § 2254 Proceedings

Mr. Vicente's 28 U.S.C. § 2254 petition raises three claims:

1. the post-conviction trial court denied Mr. Vicente due process when it cut short his questioning of trial counsel;

2. trial counsel was ineffective for (a) failing to argue the timeline defense at trial and (b) failing to object to the use of misdemeanor traffic charges as an aggravating factor at sentencing; and

3. appellate counsel was ineffective for failing to argue insufficient evidence of guilt based on the timeline defense.

Dkt. 2 at 3–4.

In response to the Court's show cause order, the respondent argues, among other things, that Claims 1, 2(b), and 3 are procedurally defaulted and that Claim 2(a) is barred by 28 U.S.C. § 2254(d) and without merit. Dkt. 10.

## II.  Procedural Default

### A.  Applicable Law

If a petitioner in custody pursuant to a state court judgment raises a claim on federal habeas review without first presenting it through "one complete round of the State's established appellate review process," the claim is procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Hicks v. Hepp*, 871 F.3d 513, 530−31 (7th Cir. 2017). Mere presentment is not enough to

avoid procedural default. A petitioner must fairly present the claim; that is, he must "alert[ ] the [state] court to the alleged federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 33 (2004). Where, as here, a petitioner alleges ineffective assistance of counsel, each basis for that claim must have been fairly presented in state court. *See Pole v. Randolph*, 570 F.3d 922, 935 (7th Cir. 2009) ("[I]f a petitioner fails to assert in the state courts a particular factual basis for the claim of ineffective assistance, that particular factual basis may be considered defaulted.").

To obtain relief on a procedurally defaulted claim, a petitioner must show either "cause and prejudice" to excuse the default or "that the court's failure to consider the defaulted claim would result in a fundamental miscarriage of justice." *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013).

**B.     Discussion**

Claims 1, 2(b), and 3 are procedurally defaulted. In Claim 1, Mr. Vicente alleges that the post-conviction court denied him due process by cutting short his questioning of trial counsel. But on post-conviction appeal, he argued only that this was an abuse of discretion, and he cited only state cases to support the argument. *See* dkt. 10-11 at 11–13. This was not sufficient to put the state court on notice that Mr. Vicente was raising a federal constitutional claim. *See Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001) ("[A]buse-of-discretion arguments are ubiquitous, and most often they have little or nothing to do with constitutional safeguards."). This claim is therefore procedurally defaulted.

7

In Claim 2(b), Mr. Vicente alleges that trial counsel was ineffective for failing to object to the use of misdemeanor traffic offenses as an aggravating factor at sentencing. Mr. Vicente did not raise this allegation about trial counsel's performance in the Indiana Court of Appeals, either on direct or post-conviction review. It is therefore procedurally defaulted. *Pole*, 570 F.3d at 935.

Finally, in Claim 3, Mr. Vicente alleges ineffective assistance of counsel on direct appeal. Mr. Vicente did not present this claim to the Indiana Supreme Court, either on direct appeal or on post-conviction review. *See* dkt. 10-15 (post-conviction petition to transfer, arguing only that the post-conviction trial court denied Mr. Vicente the opportunity to fully present his ineffective assistance of trial counsel claim). To avoid procedural default, Mr. Vicente must have done more than merely reference the existence of an ineffective assistance claim; instead, he needed to "assert in the state courts a particular factual basis" for the claim. *See Pole*, 570 F.3d at 935; *see also Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (finding ineffective assistance claim over failure to assert specific defense defaulted as it was asserted only in "general terms"). The claim is therefore procedurally defaulted.

Mr. Vicente alleges no basis to excuse his defaults. He does request a stay of federal proceedings so he can return to state court to exhaust his ineffective assistance of appellate counsel claim. Dkt. 17 at 6–7. But there is no indication that any procedural vehicle is available for exhaustion in state court at this point. His claims are therefore procedurally defaulted, not merely unexhausted. *See Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) ("If a habeas petitioner

has not exhausted a claim, and complete exhaustion is no longer available, the claim is procedurally defaulted."). And as the Court finds no basis to excuse the defaults, these claims are **DENIED** on that basis.

### III. Merits Review

Only Claim 2(a) remains for merits review. In this claim, Mr. Vicente alleges that trial counsel was ineffective for failing to argue the timeline defense at trial.

### A. Applicable Law

To succeed on a claim that trial counsel was ineffective, a petitioner must show that counsel's performance was deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 689–92 (1984); *Maier v. Smith*, 912 F.3d 1064, 1070 (7th Cir. 2019). Deficient performance means that counsel's actions "fell below an objective standard of reasonableness," and prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

When a state court has adjudicated the merits of a petitioner's claim, federal habeas relief is unavailable unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc). Where no state court has

9

adjudicated the merits of petitioner's claims, or where either prong of § 2254(d) is met, federal habeas review is *de novo*. *Thomas v. Clements*, 789 F.3d 760, 766–68 (7th Cir. 2015).

### B. State Court Adjudication

The Indiana Court of Appeals was the last state court to adjudicate this claim. Dkt. 10-14 at 11–12. However, it considered Mr. Vicente's ineffective assistance claim waived, as "he did not present this contention to the post-conviction court." *Id.* at 12. Mr. Vicente argues that he was unable to fully present his ineffective assistance claim to the post-conviction trial court because his questioning was cut short. Dkt. 17 at 6. Indeed, if the post-conviction trial court improperly refused to consider Mr. Vicente's attempt to solicit testimony, that might nullify the deference owed to the appellate court's decision under § 2254(d). *See Lee v. Kink*, 922 F.3d 772, 775 (7th Cir. 2019) ("[A] state court's refusal to consider evidence can render its decision unreasonable under § 2254(d)(2) even when its legal analysis satisfies § 2254(d)(1)."). But the Court need not reach this question, as Mr. Vicente's claim fails even under *de novo* review.

### C. Discussion

Mr. Vicente's ineffective assistance of counsel claim fails because he cannot show that he was prejudiced by counsel's failure to argue the timeline defense.[2] *See Strickland,* 466 U.S. 698 (noting that courts need not "address both

---

[2] There is not sufficient information in the record for the Court to determine whether trial counsel's choice not to argue the timeline defense was an oversight or a strategic decision. Again, the Court need not determine if this is due to Mr. Vicente's failure to

10

components of the inquiry if the defendant makes an insufficient showing on one").

The "timeline defense" hinges on Dr. Hibbard's trial testimony about when J.M.'s injuries likely occurred in relation to when they were discovered. When Dr. Hibbard evaluated J.M. in the early morning hours of March 8, 2012, the medical history stated that J.M. had been "scratched several days earlier in [the vaginal] area. There had been a couple drops of blood in her diaper for a few days and now all of [a] sudden she was bleeding profusely." Trial Tr. 351:4-7. Dr. Hibbard concluded that J.M.'s injury was not a few days old, because "once [J.M.] had the injury with the vessels that had been disrupted, . . . she would have started to bleed significantly right away. So as soon as someone noticed the bleeding, it would [have] been obvious that it was a lot of bleeding." *Id.* at 352:2-6. When asked when J.M.'s injury occurred in relation to when it was discovered by J.M.'s mother, Dr. Hibbard answered, "Shortly before then." *Id.* at 352:16. Dr. Hibbard went on to say, "I – I can't give you a five minutes [*sic*], ten minutes, yes, but it's not days.  It's a matter of minutes to you know, an hour or so probably." *Id.* at 352:16-18.

Mr. Vicente argues that Dr. Hibbard's testimony establishes that J.M.'s injuries were inflicted around 9:00 p.m.—well after J.M.'s mother and grandmother returned from the store. However, Mr. Vicente's attorney "never

---

ask proper questions or the post-conviction court's allegedly erroneous evidentiary rulings.

11

brought this to the Jury's attention." Dkt. 2 at 3. If he had, Mr. Vicente argues, "he could have been found not guilty." *Id.*

Mr. Vicente has not demonstrated that he was prejudiced by defense counsel's failure to argue the timeline defense. To establish prejudice, he must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation omitted). "A reasonable probability" requires a "substantial, not just conceivable, likelihood of a different result." *Id.* (citation and internal quotations omitted).

A jury could have reasonably understood Dr. Hibbard's testimony, when evaluated in its entirety, to mean that a significant amount of blood was likely present in J.M.'s diaper within an hour of the injury, instead of, as Mr. Vicente contends, that the injury must have occurred around 9:00 p.m. This understanding of Dr. Hibbard's testimony is reasonable because it is consistent with the fact that J.M.'s mother did not check the diaper until around 10 p.m. And when she checked the diaper, J.M.'s mother noticed substantial bleeding. This is consistent with Dr. Hibbard's testimony that J.M. "would have started to bleed significantly right away. So as soon as someone noticed the bleeding, it would [have] been obvious that it was a lot of bleeding." Trial Tr. 352:4-7.

Moreover, the jury was instructed to "fit the evidence to the presumption that the defendant is innocent if you can do so" and not to "disregard the testimony of any witness without a reason and without careful consideration." Trial Tr. 486. The Court presumes that the jury followed these instructions, and

Mr. Vicente has not presented evidence to the contrary. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). Thus, the Court concludes that the jury considered Dr. Hubbard's testimony in its entirety but did not find that it created reasonable doubt as to Mr. Vicente's guilt. Mr. Vicente therefore has not shown a "substantial likelihood" that the result would have been different had trial counsel made the "timeline defense" during final argument.

Mr. Vicente therefore cannot show prejudice based on counsel's failure to argue the timeline defense, so his ineffective assistance of counsel claim is **DENIED**.

### IV.     Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.'" 28 U.S.C. § 2253(c)(2). Where a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about whether the procedural ruling was correct and about the merits of the underlying constitutional claim. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016). Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court

to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Here, jurists of reason would not disagree that Claims 1, 2(b), and 3 are procedurally defaulted and that Claim 2(a) does not warrant habeas relief. The Court therefore denies a certificate of appealability.

## V. Conclusion

The petition for writ of habeas corpus is **DENIED**. No certificate of appealability will issue. Final judgment shall now enter.

**SO ORDERED.**

Date: 12/16/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

PEDRO VICENTE
246113
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Caryn Nieman Szyper
INDIANA ATTORNEY GENERAL
caryn.szyper@atg.in.gov